IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

**ROSA M. RIVERA RAMOS, et al.,**

**Plaintiffs**

**v.**                                                                                      **CIVIL NO. 13-1903 (GAG)**

**HON. LUIS ARROYO CHIQUÉS, et al.,**

**Defendants.**

### OPINION AND ORDER

In this civil rights case, the plaintiffs Rosa M. Rivera-Ramos, Heliodora Rosa-Rivera, Elsa Velázquez-Velázquez, Lydia E. Rivera-Enrique and Jesús Delgado-Serrano contend that their contracts with the municipality of Aguas Buenas were canceled due to their political affiliation. (Docket No. 1 ¶¶ 3-7.) The defendants, Mayor of Aguas Buenas Luis Arroyo-Chiqués and Human Resources Director of Aguas Buenas Nelson J. Ortiz-Reyes, in their official and individual capacities, now move for summary judgment of the complaint.[1] (Docket No. 58.) After considering the motion, and all replies and responses thereto, the court **DENIES** the motion for summary judgment.

---

[1] Also pending before the Court is the plaintiffs' motion requesting that the Court deem unopposed their statement of additional uncontested facts. (Docket No. 70.) In response, the defendants filed their opposition to the plaintiffs' statement of additional uncontested facts, which the plaintiffs moved to strike. (Docket Nos. 72, 73.) Pursuant to Local Rule of Civil Procedure 56(e), facts contained in a statement of material facts are deemed admitted unless properly controverted. L.Cv.R. 56(d). In this case, the defendants filed their opposition to Plaintiffs' Additional Statement of Uncontested Facts two days after the plaintiffs filed their motion to deem it unopposed. The Court notes that this filing was approximately thirteen days late, but also notes that the additional statement of facts contained 45 exhibits and more than 1300 pages. (Docket No. 62.) In light of the density of the plaintiffs' statement of additional uncontested facts, and the fact that the defendants responded shortly after being prompted, the Court declines to deem the statement unopposed or to strike Defendants' opposition. Defense counsel is reminded that in the future such a delay can result in striking a responsive pleading and urges both parties to file timely responses that comply with the local and federal rules of civil procedure.

**Civil No. 13-1903 (GAG)**

**I.  Relevant Factual and Procedural Background**

The plaintiffs are former transitory, fixed-term employees of the Municipality of Aguas Buenas.  (Docket Nos. 1 ¶ 1; 62 ¶¶ 23-24; 37-38; 51-52; 67-68; 74-75.)  The plaintiffs are affiliated with the New Progressive Party ("NPP").  (Docket No. 62 ¶¶ 22, 36, 47, 59, 72.)  The defendants are associated with the Popular Democratic Party ("PDP").  (Docket No. 62 ¶¶ 5, 10.)  The plaintiffs filed their complaint on December 11, 2013, alleging that their appointments were renewed annually without fail "so long as they supported the reelection campaign of Arroyo Chiqués."  (Docket No. 1 ¶ 3.)  They claim that the cancellation of their contracts was due to political discrimination. (Docket No. 1 ¶¶ 4-5.)

All plaintiffs had annual term appointments as transitory employees in the municipality of Aguas Buenas that were set to expire on December 31, 2012.  (Docket No. 62 ¶¶ 23-24; 37-38; 51-52; 67-68; 74-75.)  Rivera-Ramos was a Programs and/or Special Projects Coordinator, Rosa-Rivera was an office clerk, Velázquez-Velázquez was an administrative assistant, Rivera-Enrique was a janitor, and Delgado-Serrano was a worker.  (Docket No. 62 ¶¶ 24, 52, 75, 38.)  Prior to the 2012 political campaign, all plaintiffs either supported defendant Arroyo-Chiqués or were politically inactive.  (Docket No. 62 ¶¶ 13-17; 33-34; 47; 60-62, 144.)  They contend that their contracts were renewed every year until 2012, when they "openly and enthusiastically supported and campaigned" for Javier García-Pérez, Arroyo-Chiqués' political rival.  (Docket Nos. 1 ¶¶ 4-5; 62 ¶¶ 18-22; 30-35; 48-51; 59-65; 72-74)  The plaintiffs claim that they were replaced with PDP affiliated individuals loyal to Arroyo-Chiqués, who performed the duties and functions that had previously been assigned to the plaintiffs. (Docket Nos. 1 ¶ 5; 62 ¶¶ 273-75.)

## II. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see Fed. R. Civ. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, . . . and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R.Civ. P. 56(c)(1)(B). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not

3

make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the nonmoving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Mun. of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

## III.   Legal Analysis

Pursuant to 42 U.S.C. § 1983, the plaintiffs claim that the defendants violated their First Amendment rights by stripping them of a substantial portion of their duties at work because of their political affiliation with the PDP. (Docket No. 29 ¶ 183.)  In order to state a valid Section 1983 claim, the plaintiffs must establish three elements:  (1) that the conduct complained of was committed by a person acting "under color of state law;" (2) that the conduct deprived the plaintiffs of rights secured by the Constitution or laws of the United States; and (3) that the defendants were personally and directly involved in the causing the violation of federally protected rights.  E.g., Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 560-61 (1st Cir. 1989) (citations omitted).

The First Amendment prohibits government officials from "taking adverse action against public employees on the basis of political affiliation, unless political loyalty is an appropriate requirement of the employment." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 11 (1st Cir. 2011) (internal citations omitted).  To prevail in a political discrimination claim under the First Amendment, plaintiffs must produce evidence that political affiliation was a substantial or motivating factor in dismissal. Peguero-Moronta v. Santiago, 464 F.3d 29, 45 (1st Cir. 2006) (citing Acevedo-Diaz v. Aponte, 1 F.3d 62, 66 (1st Cir. 1993)). The plaintiffs must establish four

elements: (1) that the plaintiffs and defendants belong to opposing political parties; (2) the defendants had knowledge of the plaintiffs' political affiliations; (3) an adverse employment action occurred; and (4) political affiliation was a substantial or motivating factor for the adverse action. See Garcia-Gonzalez v. Puig-Moralez, 761 F.3d 81, 96 (1st Cir. 2014).

Once the plaintiffs demonstrate these threshold *prima facie* elements, the burden shifts to the defendants to present a non-discriminatory basis for the dismissals. Mt. Healthy City School Dist. Bd. Of Educ. v. Doyle, 429 U.S. 274, 287 (1977). Under this burden-shifting paradigm, the defendants must prove, by a preponderance of the evidence, that the plaintiffs would have been dismissed regardless of their political affiliations. Acevedo-Diaz, 1 F.3d at 66. The plaintiffs can still prevail by demonstrating that the proffered non-discriminatory reason for their dismissal was mere pretext. Padilla-Garcia v. Guillermo Rodríguez, 212 F.3d 69, 77 (1st Cir. 2000). Ultimately, summary judgment is only warranted if the "defendants' evidentiary proffer compelled the finding that political discrimination did not constitute a 'but for' cause for the adverse employment action." Mendez-Aponte v. Puerto Rico, 656 F. Supp. 2d 277, 285 (D.P.R. 2009) (internal citations omitted).

As to the first prong of the plaintiffs' *prima facie* case, neither party disputes that the plaintiffs are members of the NPP or that the defendants are associated with the PDP. The parties also do not dispute that the plaintiffs suffered an adverse employment action when their employment contracts were cancelled. However, the second and fourth prongs of the plaintiffs' *prima facie* case, regarding the defendants' knowledge of the plaintiffs' political association and the defendants' reasons for terminating their contracts, reveal disputes of material facts that preclude summary judgment. The defendants contend that they did not know or did not consider

**Civil No. 13-1903 (GAG)**

the political affiliations of the plaintiffs, and that any adverse employment action taken against them was not the result of political animus. (Docket No. 58 at 46.) Conversely, the plaintiffs contend that their contracts were not renewed because the defendants' acted with political animus in deciding to replace them with PDP supporters. (Docket No. 68 at 9-12.)

The plaintiffs may satisfy the second element of their *prima facie* case with circumstantial evidence demonstrating that the defendants had knowledge of their political affiliations. E.g., Martínez-Vélez v. Rey-Hernández, 506 F.3d 32, 44 (1st Cir. 2007) (finding that plaintiff's testimony that she "spoke openly about her political views and sat in the NPP portion of the de facto segregated cafeteria" was sufficient evidence for a reasonable jury to infer that defendant was aware of her political affiliation.). Importantly, this element does not require an admission by the employer or direct evidence of the employer's knowledge.

To satisfy the fourth element of the *prima facie* case, the plaintiffs must present evidence that political affiliation was a substantial or motivating factor for the adverse employment action. Lamboy-Ortiz, 630 F.3d at 239. Essentially, the plaintiffs must demonstrate that the defendants acted with discriminatory animus. Because "it is rare that a 'smoking gun' will be found in a political discrimination case, . . . circumstantial evidence alone may support a finding of political discrimination." Id. at 240. Therefore, as with the second element, the Court may conclude that political affiliation was a substantial or motivating factor for an adverse employment action by drawing inferences from the universe of factual allegations at the summary judgment stage. Rodríguez v. Municipality of San Juan, 659 F.3d 168, 178 (1st Cir. 2011).

In their motion for summary judgment, the defendants argue that "after every election, Arroyo-Chiqués restructures the municipality to maximize services and comply with the

6

**Civil No. 13-1903 (GAG)**

government plan that he proposes." (Docket No. 58 at 3.) The defendants claim that often as a result of this restructuring, certain positions "disappear" and others "may not need to be renewed." (Docket No. 58 at 3.) As to the plaintiffs' contracts, Arroyo-Chiqués "cannot recall why" Rivera-Ramos' contract was not renewed and "does not remember being aware of any issues regarding [her] performance on [the] job." (Docket No. 58-1 ¶ 473.) Similarly, Arroyo-Chiqués "cannot remember if there was [a] reason not to renew Rosa-Rivera's contract other than the expiration of the contract" but does remember "that there were differences with other employees." (Docket No. 58-1 ¶¶ 474-75.) Defendants contend that Velázquez-Velázquez worked in the "Family Department," which was specifically affected during the restructuring. (Docket No. 58-1 ¶ 478.) The defendants vaguely contend that positions may be eliminated and are not necessarily created. Id. Consequently, the defendants conclude that the reason the contracts were not renewed "*must have* been due to the restructuring of the Municipality or the programs that are reduced . . . or that the position[s were] not necessary in the Municipality." (Docket No. 58-1 ¶ 477.) (emphasis added).

Conversely, the plaintiffs maintain that the defendants decided to terminate their contracts when they began to openly support the NPP candidate challenging Arroyo-Chiqués in the 2012 elections. (Docket No. 68 at 10.) They claim that supervisors and co-workers routinely discussed politics at work, divulging not only their political affiliations but the extent of their involvement in the campaigns. (See Docket No. 62 ¶¶ 79-83.) Plaintiff Velázquez-Velázquez claims that defendant Arroyo-Chiqués and other municipal employees drove past her house and photographed the NPP support signs she had placed in front. (Docket No. 62 ¶¶ 150-160.) Plaintiff Rivera-Ramos contends that Arroyo-Chiqués instructed her supervisor to author a baseless negative

7

**Civil No. 13-1903 (GAG)**

evaluation, but the supervisor refused. (Docket No. 62 ¶ 184.) Plaintiff Delgado-Serrano claims to have heard Arroyo-Chiqués state: "The NPP members' days are counted before they are fired." (Docket No. 62 ¶ 185.) Additionally, Plaintiff Rivera-Enríquez observed Arroyo-Chiqués leaving the municipal legislature building two days after the mandatory recount that reduced his margin of victory over García-Pérez "looking visibly upset" and stating "I am coming to chop off some heads." (Docket No. 62 ¶ 186.)

The plaintiffs also describe a specific incident indicating political animus in which someone placed a photo of plaintiffs Rivera-Ramos and Rosa-Rivera on top of the employee time clock at City Hall. Below it was a handwritten message stating: "Two illiterates that would not have a job if not because they are political implants. Now they bite the hand that fed them." (Docket No. 62 ¶¶ 150-53.) Defendants do not dispute the fact that this incident occurred, but maintain that "[a]ny of them (NPP coworkers) could have placed that picture with the 'traitor' comments on top of the punch clock . . ." (Docket Nos. 58 at 40; 58-1 ¶¶ 113-15)

These competing accounts of the reasons the plaintiffs' contracts were not renewed and the climate at work leading up to the defendants' decisions not to renew the contracts give rise to clear issues of material fact as to the second and fourth elements of the plaintiffs' *prima facie* case.

Despite the defendants' proffer of a non-discriminatory reason for cancelling the contracts, the plaintiffs posit that the defendants' assertions regarding restructuring of municipal operations are merely pretextual justification for political discrimination. Specifically, the plaintiffs point to Arroyo-Chiqués' failure to articulate reasons for each of the plaintiffs' contract cancellation or how they were affected by the restructuring. (Docket No. 62 ¶¶ 261-65.) Because the plaintiffs have presented evidence of a version of events that opposes the defendants' assertion that the

8

contracts were not renewed because of normal municipal restructuring, a jury must make the necessary credibility determinations in order to discern the basis for the adverse employment action taken by the defendants. Finding that the plaintiffs have satisfied their *prima facie* burden and that genuine issues of material fact as to the second and fourth elements of their claim remain, the defendants' motion for summary judgment as to the federal § 1983 claims is hereby **DENIED**.

The plaintiffs also claim violations of Puerto Rico state law, specifically Article 1802 and 1803 of the Puerto Rico Civil Code, P.R. LAWS ANN. Tit 31 §§ 5141 and 5142. Additionally, they claim that Defendants' conduct violates Sections 1, 2, 4 and 6 of Article II of the Constitution of Puerto Rico. (Docket No. 1 ¶¶161-63.) Because the plaintiffs' political discrimination claims pursuant to the First Amendment of the U.S. Constitution survive the defendants' motion for summary judgment, the Court **DENIES** the defendants' motion for summary judgment as to the state law claims as well.

**IV. Conclusion**

For the reasons stated herein, the Court **DENIES** the defendants' motion for summary judgment at Docket No. 58.

**SO ORDERED.**

In San Juan, Puerto Rico this 1st day of February, 2016.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge